## HOLMAN, commissioner, *et al. v.* BRIDGES.

1. At an interlocutory hearing in vacation prior to the appearance term, the trial judge was authorized to hear and determine demurrers in a county other than that of the residence of the defendant or defendants where the equitable suit was pending. The hearing and judgment on demurrer was not a trial of the case as contemplated by article 6, section 16, paragraph 3, of the constitution of Georgia (Civil Code (1910), § 6540).

2. Where a taxpayer or property-owner brings an action against a county or its officers upon a matter of public and general interest to all other taxpayers of such political subdivision, and the action either expressly or by necessary implication is on their behalf, they are equally bound by the adjudication, and a judgment is a bar to any subsequent proceeding by them or any of them seeking similar relief upon the same facts. The judge, therefore, erred in sustaining the plaintiff's demurrer to the defendant's plea of res adjudicata.

3. The ruling last stated controls the case and requires a reversal of the judgment. In these circumstances all subsequent proceedings were nugatory.

No. 5913. DECEMBER 14, 1927.

Injunction. Before Judge Yeomans. Early superior court. February 19, 1927.

*Lowrey Stone* and *C. L. Glessner,* for plaintiffs in error.

*H. A. Wilkinson,* contra.

GILBERT, J. J. W. Bridges filed a petition seeking to enjoin Grady Holman and others, commissioners of roads and revenues, and J. G. Butler, treasurer, of Early County, from paying, as per contract of employment, a sum of money to W. A. Fuqua as county demonstration agent. The petition alleged, among other things, that said agent was attached to the department of education and could be compensated only out of educational funds, none of which were in the hands of said treasurer or in control of said commissioners; that a general tax of 5 mills was levied by said commissioners for 1926 for educational purposes in said county; that said fund was collected by the tax-collector and paid to the county school superintendent; that said commissioners had no authority to issue warrants against said fund; and that said commissioners had no funds on hand or in prospect with which to pay said agent. On presentation of the petition the judge issued

Judgments, 34 C. J. p. 1002, n. 35; p. 1028, n. 66; p. 1029, n. 67.
Pleading, 31 Cyc. p. 270, n. 98.
Trial, 38 Cyc. p. 1267, n. 1.
Venue, 40 Cyc. p. 96, n. 79.

a rule nisi requiring the defendants to show cause at Dawson, Georgia, in Terrell County, on a stated day, why the prayers of the petition should not be granted. The defendants appeared at Dawson at the required time and presented a demurrer to the petition and a plea of res adjudicata. The plaintiff demurred to the plea. Over objection of the defendants, based upon the ground that, under the constitutional provision in the Civil Code (1910), § 6540, the court was without jurisdiction to render a judgment on said demurrers in Terrell County prior to the appearance term of the superior court of Early County, the court sustained the demurrer to the plea, and overruled the demurrer to the petition. The court also granted the injunction and overruled the defendants' objection to the allowance of an amendment to the petition. Error was assigned upon these judgments. The plea of res adjudicata was based upon a judgment rendered in 1924, sustaining a general demurrer to a petition brought by other citizens and taxpayers of Early County against the board of commissioners of that county, to enjoin the payment of a salary to Fuqua as county farm demonstrator. The suit was brought by different plaintiffs but against the same person as treasurer, though against different persons as county commissioners, and for the same purpose. The record shows that said former suit was filed in Early County, and that the judgment on demurrer was had in Terrell County, just as in the present case.

1. The suit is in equity. Under the allegations respecting the residence of the defendants, it was properly filed in Early County. At an interlocutory hearing in Terrell County, the court granted a temporary injunction and also rendered judgments on the demurrers as above stated. Had the judgment gone no further than to grant the injunction, jurisdictional difficulty would not have been encountered. *Semmes* v. *Columbus,* 19 *Ga.* 471, 484; *Burchard* v. *Boyce,* 21 *Ga.* 6. The defendants objected to the rendition of judgment on the demurrers, on the ground that the hearing was without the county of the residence of the defendants where the suit was filed, but in another county, and that the court was without jurisdiction. The objection was overruled, the court placing his decision upon the act of 1925 (Ga. Laws 1925, p. 97). That act expressly provides that decisions on demurrers may be rendered "at any interlocutory hearing before the appear-

ance term." It does not undertake to otherwise enlarge the powers of the court, and does not make reference to the place where such hearings and decisions may take place. Did the court err in thus ruling on the demurrers? The answer depends upon whether hearing and rendering judgment upon a demurrer to a petition or to a plea of res adjudicata is trying the case. The constitution of Georgia declares: "Equity cases shall be *tried* in the county where a defendant resides against whom substantial relief is prayed." (Italics ours.) Civil Code (1910), § 6540. The word "trial" as applied to a proceeding in court has been repeatedly defined with reference to different statutes, and in these circumstances the courts have given a variety of meanings, depending upon the particular statute. 3 Bouvier L. Dict. 3320; 4 Words & Phrases (2d S.), 1006. In Bouvier it is said: "Undoubtedly the word 'trial' in the common law meant the examination and determination of the case upon the facts, and the word was usually applied to a trial by jury; 'hearing' was used with respect to cases in equity. The word 'trial' is now used not only colloquially but by courts, with a more comprehensive signification, and it has been defined to be 'the examination before a competent tribunal, according to the law of the land, of the facts or law put in issue in a cause for the purpose of determining such issue.' Finn *v.* Spagnoli, 67 Cal. 330, 7 Pac. 746."

In *Castellaw* v. *Blanchard,* 106 *Ga.* 97, at p. 100 (31 S. E. 801), this court, dealing with the word "trial" and with reference to a statute, said: "Is the word *trial* there used in its broad and comprehensive sense—'the investigation and decision of a matter in issue between parties before a competent tribunal; including all the steps taken in the case from submission to the jury to the rendition of the judgment,' or is the word there used in its restricted sense—'the investigation of the matter of fact in issue?' Anderson's Law D. (trial). In our opinion the word as used in that section is to be given only its restricted meaning, that is, the sense in which it is used by Sir William Blackstone when he says: 'Trial then is the examination of the matter of fact in issue; of which there are many different species, according to the difference of the subject, or thing to be tried.' 3 Black. Com. 33." The Supreme Court of the United States, in Carpenter *v.* Winn, 221 U. S. 533 (31 Sup. Ct. 683, 55 L. ed. 842), held

that "the word 'trial' . . 'refers to the final examination and decision of matter of law as well as facts, for which every antecedent step is a preparation." The question in that case was whether, under the Federal statute providing for the production of books or writings "in the trial of actions at law," the court could compel the production of the same "in advance of the trial." The court held that the words "in the trial" referred to the final trial on the issue of law and facts. The rule first quoted is from a headnote. In the opinion Mr. Justice Lurton discusses the meaning of the word "trial" at length. He says: "Blackstone defines 'trial' to be the examination of the matters of fact in issue. 3 Bl. Com. 350. This definition is adopted by Bouvier. In Miller v. Tobin, 18 Fed. Rep. 609, 616, Judge Deady applied this meaning to the removal act, saying, 'trial is a common-law term, and is commonly used to denote that step in an action by which issues or questions of fact are decided.' But the word has often a broader significance, as referring to that final examination and decision of matter of law as well as fact, for which every antecedent step is a preparation, which we commonly denominate 'the trial.' Many cases are cited for this definition in 28 Am. & Eng. Ency., p. 636. But this does not help out those who would broaden the meaning so as to justify an order to produce before such judicial examination of both matters of fact and law which constitute that final step which is called 'the trial.'" A few of the State courts have arrived at similar conclusions, but the decisions are based upon statutes and constitutional provisions which are not identical with ours.

The function of a demurrer is to test the sufficiency of the pleadings. *Hicks* v. *Beacham,* 131 *Ga.* 89, at p. 93 (62 S. E. 45). The Code giving the judge jurisdiction to hear demurrers in vacation, "it necessarily follows that he would have authority to allow amendments to the bill in order to perfect it and to meet the grounds of demurrer." *DeLacy* v. *Hurst,* 83 *Ga.* 223, 227 (9 S. E. 1052). "The rules of pleading have been adopted partly with a view of saving both the parties and the public the trouble and expense of an unnecessary trial." *Warren* v. *Powell,* 122 *Ga.* 4 (49 S. E. 730). There is no good reason why the litigant should be allowed to proceed with a trial, and to introduce evidence to prove what amounts in law to nothing. *Kelly* v. *Strouse,*

116 *Ga.* 872, at p. 880 (43 S. E. 280). The hearing and judgment on demurrers are to reduce the pleadings to real issues, to clarify them, and to make sure that there is a definite cause of action—a real cause to try. If no case, there can be no trial. In a general and broad sense the ruling upon demurrer is a part of, or incidental to, the trial of the case, but is not the trial in the restricted sense contemplated by the framers of our constitution when using the word "tried" in that instrument as quoted above. This view is strengthened by the provisions of the Civil Code (1910), § 4850. That section provides: "The *judges* [emphasis ours] of the superior courts have authority— . . To hear and determine, in vacation, all demurrers to petitions for equitable relief . ." It is to be especially observed that the authority here conferred is upon the *judges* of the superior court and not upon the court. Manifestly the court must function at the time and place required by the constitution. The authority conferred is to determine demurrers in vacation. Vacation means a time when the court is not in' session. From the earliest times in England, the chancellor exercised many powers in vacation. So far as we are advised, the trial judges have always construed this statute to authorize the determination of demurrers without the county where the case was pending. In such cases the order or judgment rendered always has been filed and recorded on the minutes of the proper court. To declare these judgments void for lack of jurisdiction would not only reverse a practice wellnigh universal, but it would reopen and unsettle litigation in innumerable cases long since thought by the parties interested to be settled, and perhaps others have acquired rights thereunder. This furnishes another strongly persuasive reason for holding that the judge had the authority exercised. If the judge could act in "vacation" in the county where the defendants reside, manifestly he could do so elsewhere in the State. This is precisely what has always been done in such cases and notably in the exercise of such equitable powers as the grant of interlocutory injunctions and the appointment of receivers. Indeed, as to grant of injunction in this case no error is assigned on the ground that it was done outside of Early County. The very next section of the Code, 4851, grants authority to judges to act out of their own circuits in specified circumstances. Section 4852 provides: "The judges of

the superior and city courts have power to hear and determine, in vacation as well as in term time, without any order passed in term time, all motions for new trial, certioraries, and all such other matters as they now can hear and determine in term time, and *which are not referred to a jury."* (Italics ours.)   Here again we find in the words which we have italicized another reason to hold that the provision of the constitution requiring equitable cases to be "tried in the county," etc., means the trial of matters of law and fact which might require the presence of a jury.   In a proceeding where the question of jurisdiction was raised, based upon the constitutional provision of section 6540, this court said the matter did not make " 'a case' within the meaning of these provisions.   They relate only to equitable petitions filed in the superior court, and upon which a trial by jury may or must be had."   *Heath* v. *Miller,* 117 *Ga.* 854, at p. 861 (44 S. E. 13). The General Assembly must have so understood the constitution. Both reason and unbroken practice appeal strongly for the interpretation which we have adopted, and such interpretation will harmonize with the constitution and not run counter thereto. Plaintiffs in error cite on this point *Ray* v. *Lavonia,* 141 *Ga.* 626 (2) (81 S. E. 884), and *Murray* v. *Tifton,* 143 *Ga.* 301 (84 S. E. 967).   Neither of these cases has any bearing on this question.   They relate to final judgments rendered on the law and facts of the cases brought to validate bonds.   Upon the whole, we think it was the intention of the framers of our constitution to require cases in equity to be *filed* in the county of the residence of a defendant and "tried" there for the determination' of issues of fact, and that they did not have reference to incidental or preliminary rulings for the perfecting of pleadings.   The present case was filed in the proper jurisdiction, and the judgment on demurrers was rendered in another county of the same circuit by the judge of that circuit.

2.   "Where a citizen and taxpayer brings an action in behalf of himself and other taxpayers against a municipality, every citizen is regarded as a party to the proceedings, and bound by the judgment entered therein.   In such cases the people are regarded as the real parties."   15 R. C. L., 1035, § 510.   The same rule is stated in 2 Black on Judgments, § 584, and in 1 Freeman on Judgments, § 437.   "A judgment on a petition by a taxpayer, on behalf of

himself and other taxpayers, for mandamus to compel the city council to execute and put in force an act of the legislature, is res adjudicata of a subsequent similar petition, though filed by another taxpayer." Montgomery City Council *v.* Walker, 154 Ala. 242 (45 So. 586, 129 Am. St. R. 54); Greenberg *v.* Chicago, 256 Ill. 213 (99 N. E. 1039, 49 L. R. A. (N. S.) 108, to which is appended an exhaustive note on the question). Other decisions to the same effect are: Stallcup *v.* Tacoma, 13 Wash. 141 (42 Pac. 541, 52 Am. St. R. 25); Harmon *v.* Auditor, 123 Ill. 122 (13 N. E. 161, 5 Am. St. R. 502). Of course the rule applies only where there is no fraud or collusion and where no special private interest is shown. Eaton *v.* Board, 184 N. C. 471 (114 S. E. 689). See also *Singletary* v. *Chipstead,* 142 *Ga.* 208 (82 S. E. 547). The judge, therefore, erred in sustaining the plaintiff's demurrer to the defendants' plea of res adjudicata. It is true that the hearing and judgment rendered on the demurrer in the former case were had at Dawson, in Terrell County, and not in Early County where the case was pending One of the issues raised by the plaintiffs in error in the present case is that the judge of the superior court was without jurisdiction to render judgments on demurrers in a county other than that of the residence of the defendants; but, as will be seen, we have decided that issue adversely to the contention of plaintiffs in error. If our decision had been otherwise on this question, it would necessarily follow therefrom that the decision in the former case was void, and that it would constitute no bar to the present action.

*Judgment reversed. All the Justices concur.*